IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                      CR. NO. S-05-0238 FCD (GGH)

    vs.

DALE C. SCHAFER and
MARION P. FRY,

        Defendants.                ORDER
_____/

*Introduction and Summary*

       On September 27, 2005, defendants in the above referenced case moved for a modification of their pretrial release conditions based on the recent decision in United States v. Scott, __F.3d__, 2005 WL 2174413 (9th Cir. 2005). Specifically, defendants requested that the condition requiring that defendants submit themselves to drug testing be stricken. For the reasons expressed below, the request is denied.

*Discussion*

       Defendants have been indicted on charges of conspiracy to distribute marijuana and manufacturing marijuana (100 plants). The maximum potential penalty is 40 years in prison. Defendants have been accused, among other things, of running an "all requests granted" medical

1

marijuana prescription operation.

Defendants appeared before Magistrate Judge Nowinski on June 22, 2005. After some discussion and balking on the part of defendants, Schafer and Fry agreed to the terms and conditions of pretrial release which included a provision permitting random drug testing at the discretion of the pretrial services officer. Such a condition has been often imposed in this district in significant drug trafficking cases, especially where another condition, that of refraining from illegal drug use, has been imposed. Given the more than probable use of a controlled substance by defendants, the drug testing condition was the only realistic way to enforce the "no controlled substance use" condition of pretrial release.

In <u>United States v. Scott</u>, the defendant had been charged and released pretrial in state court proceedings involving drug possession crimes. A standard condition of release under Nevada law included random drug testing. Based on a tip, Nevada officials went to Scott's residence and tested him for drug use; Scott tested positive. Thereafter, the Nevada officials searched Scott's house and discovered an unregistered shotgun. Scott was federally indicted on the gun charges, and he moved to suppress evidence of the shotgun. The district court granted the motion to suppress, and the government appealed.

At issue in <u>Scott</u> were the initial random drug testing condition and the search with less than probable cause condition. The drug testing condition is pertinent here as is the warrantless search issue insofar as drug testing constitutes an unreasonable search. The Ninth Circuit found in a split decision that the Nevada law condition of requiring a pretrial releasee to assent to a drug testing condition as an "inducement" to pretrial release violated the Fourth Amendment. <u>Scott</u> further found that a pretrial releasee could not be forced to "consent" to the condition as a condition for pretrial release. However, the Ninth Circuit did not discuss Nevada law nor the legislative reasons why Nevada law imposed the condition in the first place. The Ninth Circuit did discuss the fact that the compelling general need for crime prevention was insufficient to justify the drug testing condition. Of importance here, the majority found that if

the government had made a "special needs" showing for testing Scott for drugs, the imposition of the condition may have been constitutionally acceptable.

Although discussed at hearing, not at issue here is the correctness of the <u>Scott</u> decision, although the undersigned freely concedes that he believes the dissent had the better of the argument. Nevertheless, whether the undersigned agrees with the majority, or disagrees, the undersigned is bound by the <u>Scott</u> majority's holding. The undersigned understands his role in the judicial hierarchy and would never attempt to not apply a binding case in some act of judicial "independence." Nor would the undersigned make some strained, but ultimately unsupportable, distinction in this case. The principle that laws govern (including case law), and not the predelictions of individuals, is the cornerstone of the judicial system.

Having said the above, the court finds a valid distinction between the Nevada situation and that of federal pretrial detention law. As stated above, in the presence of an adequate showing of special needs, random drug testing of pretrial defendants can pass constitutional muster. In federal cases, Congress has established the special need for drug testing conditions in the *detention/release context* as opposed to some general desire to avert crime—a legislative fact that was apparently absent in the Nevada case.

First, unlike the situation in many states, federal detention criteria includes safety of the community as an important release determinant. Indeed, Congress has established that drug trafficking in specified amount will give rise to a *presumption* that the community would be endangered if the defendant were to be released. 18 U.S.C. § 3142(e). This legislative pronouncement of a special need to protect the community in drug trafficking cases in the detention/release context cannot be ignored by any court. Unless found to be irrational or otherwise beyond the power of Congress, it is essentially binding. "'The process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions

from it.'"  Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 28, 96 S. Ct. 2882, 2898 (1976).

Moreover, Congress also expressly established conditions, in applicable cases, which permit judges to require pretrial detainees from using controlled substances while released, and importantly, allows judges to *require* pretrial releasees to undergo drug treatment.  Section 3142(c)(B) (ix), (x).  After fifteen years on the bench, the undersigned can take judicial notice of the fact that nearly every drug treatment program available for pretrial detainees requires that its participants undergo drug testing.  Indeed, a judge can even require as an "inducement" to a defendant hoping to avoid jail that he not reside in his home but in a drug treatment facility.  It takes no large leap in logic to understand that Congress understood the special need to protect the community when releasing defendants charged in drug cases, and gave judges the authority to fashion release conditions which included drug testing either as part of (ix) and (x) above, or as part of the authority in (xiv) to condition release on "any other condition" needed to protect the safety of the community.

Finally, the agency tasked by Congress with carrying out pretrial services, the Pretrial Services Agency, believes that there is authority and a need to drug test in specific cases. *The Supervision of Federal Defendants*, IV-7 & V-15.  The Judicial Conference of the United States approved the Monograph in 2004.  This administrative *and* judicial determination is entitled to deference and further demonstrates the special need to test certain defendants released pretrial.

These Congressional and administrative judgments, which were entirely not at issue in Scott, control the outcome in this federal case, and when superimposed on the facts of this case and defendants own defiant statements[1] satisfy the special needs criteria of Scott.

---

[1] Defendants herein believe strongly in their "right" to use or utilize medical marijuana in violation of federal law.  After her detention hearing, and despite the agreement to abide by the terms and conditions of pretrial release, defendant Fry was quoted:
> Speaking to News10 in front of the courthouse, Fry said the charges wouldn't stop her from writing prescriptions for marijuana

4

Therefore, defendants' request to delete drug testing from their conditions of release is denied.

DATED: 9/29/05

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
schafer238.ord

---

for patients. "I intend to generate money and I intend to protect my family and although those things are done for my business, which is the business of medical marijuana," she said. "I've been doing it for six years and I don't intend to quit." Www.news10.net/storyfull1.asp?id=11629.

The record in this case also strongly indicates the use of this controlled substance, and its desired continued use by both defendants.

5