IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,

    v.

DALE C. SCHAFER and
MARION P. FRY,

       Defendants.

_____/

NO.  CR.S-05-0238 FCD

ORDER RE DEFENDANTS' MOTION
FOR DISCOVERY

      The above-entitled action came before the court on motions for discovery filed on behalf of defendants Dale C. Schafer and Marion P. Fry.  Through the three motions defendants seek discovery and/or an order with respect to: (1) selective prosecution; (2) <u>Henthorn</u> material; and (3) the rough notes of law enforcement personnel.  At the hearing held on November 29, 2005, Anna Ling appeared on behalf of defendants Schafer and Fry.  Assistant United States Attorney Anne Pings appeared on behalf of plaintiff United States of America.

/////

1

1    Upon consideration of the parties' briefs and arguments
2  presented at the hearing and for the reasons set forth below, the
3  motion will be denied in part and granted in part.

4                              **BACKGROUND**

5    In an indictment returned by the federal grand jury on June
6  15, 2005, the defendants were charged in two counts.  The first count
7  charges them with conspiracy to distribute marijuana, to manufacture
8  at least 100 plants of marijuana and to distribute at least 100 plants
9  of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846.  The second
10 count charges them with manufacturing at least 100 plants of marijuana
11 in violation of 21 U.S.C. § 841(a)(1).

12   Below the court will first address the legal standards
13 applicable to consideration of the discovery motions and will then
14 apply those standards to the preliminary showing made by the
15 defendants.

16 I.   SELECTIVE PROSECUTION

17   As indicated above, the defendants seek discovery (or in the
18 alternative an evidentiary discovery hearing) with respect to their
19 claim that they are the victims of unconstitutional selective
20 prosecution.  In this regard, defendants have suggested in their
21 moving papers, their reply brief or at the hearing on the motion that
22 they have been improperly selected for federal prosecution because:
23 (1) they have complied with California's "Compassionate Use Act of
24 1996" with respect to the medical use of marijuana; (2) defendant
25 Schafer is a lawyer and defendant Fry is a medical doctor and both
26 have advised or practiced in the field of California's medical

                                    2

1  marijuana laws; (3) they have exercised their First Amendment rights

2  in being outspoken proponents of the use of medical marijuana; (4)

3  they have a valid defense to cultivation and distribution charges

4  under California law which federal prosecutors wish to deny them; and

5  (5) at least in the case of defendant Schafer he is a medical

6  marijuana patient.

7       A.   Legal Standards

8            The United States Supreme Court has considered the showing

9  necessary for a defendant to be entitled to discovery on a claim of

10 selective prosecution.  See United States v. Armstrong, 517 U.S. 456

11 (1996).  In that case, the defendants had been charged with conspiracy

12 to possess with intent to distribute more than fifty grams of crack

13 cocaine in violation of 21 U.S.C. §§ 841, 846.  Armstrong, 517 U.S. at

14 458.  The defendants filed a motion for discovery in connection with a

15 selective prosecution claim in which they asserted that they had been

16 charged in federal court because they were black.  In support of that

17 motion, the defendants offered the affidavit of a paralegal from the

18 Office of the Federal Public Defender, setting forth a "study" of the

19 twenty-four §§ 841 or 846 cases closed by that office since 1991.  517

20 U.S. at 459.  That "study" concluded that in each such case, the

21 defendant was black.  Id.

22           The Supreme Court concluded that the defendants had failed

23 to satisfy the threshold showing necessary to entitle them to

24 discovery on the issue of selective prosecution.  In reaching this

25 conclusion, the court observed:

26 /////

Our cases delineating the necessary elements to prove a claim of selective prosecution have taken great pains to explain that the standard is a demanding one.  These cases afford a "background presumption," cf. United States v. Mezzanatto, 513 U.S. 196, 203 (1995) that the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims.

* * *

Having reviewed the requirements to prove a selective-prosecution claim, we turn to the showing necessary to obtain discovery in support of such a claim.  If discovery is ordered, the government must assemble from its own files documents which might corroborate or refute the defendant's claim.  Discovery thus imposes many of the costs present when the government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.

517 U.S. at 463-64, 468.  See also United States v. Turner, 104 F.3d 1180, 1184 (9th Cir. 1997)(In order to be entitled to discovery to establish a defense of selective prosecution, a defendant must make an appropriate threshold showing which is to be conducted against the background presumption that the prosecution is properly discharging its duties and not acting with discriminatory bias contrary to the commands of the Constitution.).

In Armstrong the Supreme Court recognized a consensus among the federal courts of appeal regarding the requisite showing needed to establish an entitlement to discovery, requiring a presentation of "'some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory

4

intent." 517 U.S. at 468 (quoting <u>United States v. Berrios</u>, 501 F.2d
1207, 1211 (2d Cir. 1974)). <u>See</u> <u>also</u> <u>Turner</u>, 104 F.3d at 1184. The
court described this "some evidence" threshold showing requirement as
follows:

> [The majority of courts] that have confronted the
> issue have required that defendants produce some
> evidence of differential treatment of similarly
> situated members of other races or protected
> classes. In the present case, if the claim of
> selective prosecution were well founded, it should
> not have been an insuperable task to prove that
> persons of other races were being treated
> differently than respondents. For instance,
> respondents could have investigated whether
> similarly situated persons of other races were
> prosecuted by the State of California, were known
> to federal law enforcement officers, but were not
> prosecuted in federal court. We think the
> required threshold – a credible showing of
> different treatment of similarly situated persons
> – adequately balances the government's interest in
> vigorous prosecution and the defendant's interest
> in avoiding selective prosecution.

517 U.S. at 470.

        B.    <u>Analysis</u>

        As noted above, in order to be entitled to discovery on a
discriminatory prosecution claim, the defendants must make a credible
threshold showing presenting some evidence demonstrating that: (1)
they are members of a protected class; (2) members of that protected
class are being subjected to different treatment than those similarly
situated persons who are not members of that protected class; and (3)
the different treatment is being meted out with a discriminatory
intent.

        In attempting to meet their burden in this regard,
defendants rely solely on the declarations of attorney J. Tony Serra,

1  counsel for defendant Dale Schafer.  In his declaration attorney Serra
2  states merely that he believes "that the primary reason this case is
3  being federally prosecuted is to deprive defendants" of the medical
4  marijuana defense that might be available to them in state court.
5  (Mot. for Disc., Decl. of Counsel filed October 4, 2005 at 2.)  In
6  addition, counsel asserts that he also believes that "the government
7  has purposely selected defendants herein because they are licensed
8  professionals legally exercising their first amendment right, by
9  advising on or issuing legal medical marijuana recommendations" and
10  that the United States Attorney's Office in this district has a policy
11  that such cases are to be federally prosecuted.  (Id.)

12          Counsel's declaration fails to make the required threshold
13  showing.  First, the defendants have made no showing that they are
14  members of a protected class.  Moreover, the defendants have presented
15  no evidence of any case involving differential treatment of similarly
16  situated individuals of a class other than their own.  Thus, the
17  defendants have failed to make a prima facie showing that defendants
18  in other cases truly similarly situated (in terms of number of
19  marijuana plants found, sophistication of growing operation, if any,
20  etc.) have been treated differently or that only those individuals who
21  were professionals advocating the use of "medical marijuana" were
22  considered for federal prosecution.  Obviously, this United States
23  Attorney's Office frequently prosecutes individuals who are not
24  professionals and who do not advocate the medical use of marijuana for
25  manufacturing and/or distributing marijuana in excess of one hundred
26  plants.  Similarly, none of the other variations of a protected class

of which they are members suggested by defendants are supported by any prima facie showing.

The defendants unsupported claim that they are entitled to discovery because they may have been selected for prosecution because they exercised their First Amendment rights in being outspoken advocates for the use of medical marijuana is equally unavailing.  As the United States Supreme Court has stated in addressing a selective prosecution claim in a different context:

> We think it important to note as a final matter how far the implications of petitioner's First Amendment argument would extend. Strictly speaking, his argument does not concern passive enforcement but self-reporting. The concerns he identifies would apply to all nonregistrants who report themselves even if the Selective Service engaged only in active enforcement. For example, a nonregistrant who wrote a letter informing Selective Service of his failure to register could, when prosecuted under an active system, claim that the Selective Service was prosecuting him only because of his "protest."  Just as in this case, he could have some justification for believing that his letter had focused inquiry upon him.  Prosecution in either context would equally "burden" his exercise of First Amendment rights. Under the petitioner's view, then, the Government could not constitutionally prosecute a self-reporter--even in an active enforcement system--unless perhaps it could prove that it would have prosecuted him without his letter.  On principle, such a view would allow any criminal to obtain immunity from prosecution simply by reporting himself and claiming that he did so in order to "protest" the law.  The First Amendment confers no such immunity from prosecution.

Wayte v. United States, 470 U.S. 598, 613-14 (1985).

For all of these reasons, defendants have failed to meet their preliminary burden of demonstrating an entitlement to discovery of evidence relating to a potential selective prosecution defense.

This conclusion is supported by consideration of the factual record
that the Supreme Court had before it in the <u>Armstrong</u> case.  There,
the defendants had offered the "study" of the twenty-four cases closed
by the Federal Defender's Office in the Central District of California
during 1991 involving alleged violations of 21 U.S.C. §§ 841, 846.
That study listed the twenty-four individual defendants, their race,
and whether they were prosecuted for dealing cocaine as well as crack
cocaine and the status of each case.  In connection with a motion for
reconsideration, the defendants submitted: (1) the affidavit of
counsel reporting what he had been told by the intake coordinator at a
drug treatment center regarding the equal number of Caucasian, in
comparison to minority, drug users and dealers; (2) an affidavit from
a criminal defense attorney stating that in his experience, non-blacks
are prosecuted in state court for crack cocaine offenses; and (3) a
newspaper article suggesting that black defendants charged with crack
cocaine offenses in federal court were being disproportionately
punished.

      The United States Supreme Court found that this showing did
not constitute "some evidence" tending to show the existence of the
essential elements of a selective-prosecution claim.  517 U.S. at 470.
In so concluding, the court stated:

> The study failed to identify individuals who were
> not black, could have been prosecuted for the
> offenses for which respondents were charged, but
> were not so prosecuted.  This omission was not
> remedied by respondents' evidence in opposition to
> the government's motion for reconsideration.  The
> newspaper article, which discussed the
> discriminatory effect of federal drug sentencing
> laws, was not relevant to an allegation of
> discrimination in decisions to prosecute.

> Respondents' affidavits, which recounted one
> attorney's conversation with a drug treatment
> center employee and the experience of another
> attorney defending drug prosecutions in state
> court, recounted hearsay and reported personal
> conclusions based on anecdotal evidence.

Id.  The same rationale applies here.

For all of these reasons, the defendants are not entitled to discovery with respect to their claim of discriminatory prosecution. Likewise, having failed to make a prima facie showing of selective prosecution, they are not entitled to an evidentiary discovery hearing.[1]

II.  Henthorn Materials

By this motion, defendants seek an order compelling the government to provide them with all impeaching material contained in the personnel files of all investigators and law enforcement officers, including all local, state and federal officers, that the government will call to testify in this case.  Although the defendants rely primarily upon the decision in United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), they also argue that where, as here, in presenting its case the government is relying in large part on the work of local law enforcement personnel the government should be required to provide to the defense favorable, exculpatory or impeaching evidence contained in the personnel files of the local law enforcement officers it intends to call as witnesses.  Finally, the defense requests that this /////

---

[1]  Defendants have offered no authority in support of their alternative request that the court conduct an "evidentiary discovery hearing" with respect to their selective prosecution claim.

1  court conduct a judicial in camera review of these records to assure

2  the impartiality and thoroughness of that review.

3       The government responds that it is aware of its obligation,

4  under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), to

5  examine the personnel files of testifying federal law enforcement

6  officers for exculpatory and impeaching materials.  The government

7  reports that once a trial date has been set and the witnesses have

8  been determined, the government will provide the defendants with

9  Henthorn, Brady and Giglio material related to those witnesses in time

10 for it to be of use to the defendants at trial.  However, the

11 government opposes the defense motion to the extent it seeks an order

12 requiring federal prosecutors to review the personnel files of state

13 or local law enforcement officers who may be called to testify,

14 arguing that it is not obligated under the law to do so.

15      The government's position is supported by the law of this

16 circuit.  As one district court has summarized:

17          The government has a duty, after a request by the
            defense, to inspect for Brady material the
18          personnel records of federal law enforcement
            officers who will testify at trial, regardless of
19          whether the defense has made a showing of
            materiality.  United States v. Henthorn, 931 F.2d
20          29, 31 (9th Cir. 1991).  The court does not have
            the authority to require the prosecutor to
21          personally review the files, however.  United
            States v. Jennings, 960 F.2d 1488, 1491 (9th Cir.
22          1992).  Henthorn requirements are met when the
            staff of the appropriate agency examines the file
23          and notifies the federal prosecutor of potential
            Brady material, after which the federal prosecutor
24          determines whether the material should be produced
            to the defense or provided to the court for an in
25          camera review.  Id. at 1492.  The prosecution has
            no obligation to turn over materials not under its
26          control, including personnel files of state law

10

1  enforcement witnesses.  <u>United States v.</u>
2  <u>Dominguez-Villa</u>, 954 F.2d 562, 566 (9th Cir. 1992).

3  <u>United States v. Colima-Monge</u>, 962 F. Supp. 1337, 1339 (D. Or. 1997).

4  The government's duty in this regard has been found not to extend

5  beyond the category of records strictly defined by the court in

6  <u>Henthorn</u>.  <u>United States v. Santiago</u>, 46 F.3d 885, 895 (9th Cir.

7  1995); <u>United States v. Dominguez-Villa</u>, 954 F.2d 562, 565 (9th Cir.

8  1992).  With respect to the district court's interference in the

9  practices of the executive branch in complying with <u>Henthorn</u>, absent a

10  showing of necessity, <u>Jennings</u> remains the law of this circuit.

11  <u>United States v. Herring</u>, 83 F.3d 1120 (9th Cir. 1996).  Accordingly,

12  the court declines defendants' invitation to conduct the review of

13  personnel files itself.  Finally, without regard to the decisions in

14  <u>Herring</u>, <u>Jennings</u> and <u>Henthorn</u>, under <u>Brady</u> the government is

15  obligated, upon request, to disclose information to the defense

16  regarding government witnesses that could be used to impeach them.

17  See <u>United States v. Bagley</u>, 473 U.S. 667, 675-77 (1985).

18       Under these principles, the government's obligation to

19  review personnel files includes those of all federal law enforcement

20  officers who are called to testify at trial or in connection with any

21  pretrial motion.  The scope of information disclosed shall include all

22  information favorable to the defense in attempting to impeach the

23  witness, including either disclosure or <u>in camera</u> submission of

24  documents reflecting any complaint, investigation or internal

25  administrative or disciplinary proceeding regardless of whether the

26  complaint or allegation was found to be credible by the agency.  <u>See</u>

11

United States v. Kiszewski, 877 F.2d 210, 215-16 (2d Cir. 1989) (case remanded due to district court's refusal to compel production of FBI agent's personnel file for in camera inspection based upon the government's representation that the file contained complaints and allegations that were deemed unfounded or upon which the agent was exonerated and thus contained no Brady material).

The defendants' request that the government be required to produce the discovery sought at least ninety days before trial will be denied.  With respect to witnesses to be called to testify at any evidentiary hearings on pretrial motions or at trial, such information shall be produced to the defense sufficiently in an advance of the proceeding so as to permit defense counsel to effectively use the material.

To the extent the defense wishes to seek exculpatory or impeachment materials from the personnel files of state or local law enforcement officers involved in this investigation, it is again suggested to counsel, as it was at the hearing on this motion, that they proceed by way of subpoena.  See United States v. Vought, 69 F.3d 1498, 1501 (9th Cir. 1995) ("The district court suggested that [materials in the possession of state law enforcement] might be discoverable in part under Fed. R. Crim. P. 17(c).")[2]

/////

/////

_____

[2]   The Assistant United States Attorney stated at the hearing that she would attempt to facilitate the production of such records by local officials pursuant to defense subpoenas so long as those subpoenas called for production of records in connection with an evidentiary hearing or trial.

III. <u>Rough Notes of Law Enforcement</u>

Defendants request an order restraining all law enforcement personnel who investigated the charges in this and related cases from destroying any notes relating to the investigation or indictment.  In addition, the defendants seek discovery of such notes, at the appropriate time, to the extent they contain evidence favorable to the defendants, reflect statements of witnesses, contain statements of the defendants or otherwise contain <u>Brady</u> material.  The defendants also again request discovery of all Jencks Act material at least ninety days before trial.

The government opposes the request as overbroad while acknowledging its obligation, to preserve original notes taken by agents during interviews with prospective government witnesses or with an accused.  <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976).  In this regard, the government argues that the rough notes of such interviews will not constitute Jencks material if they are cryptic, not substantially verbatim, incomplete and not signed or adopted by the witness.  <u>See</u> <u>United States v. Boshell</u>, 952 F.2d 1101, 1104 (9th Cir. 1991); <u>United States v. Bobadilla-Lopez</u>, 954  F.2d 519, 522 (9th Cir. 1992).  Accordingly, the government agrees to preserve the notes of witness and defendant interviews and to produce them to the defense at the time of Jencks material production, if the notes contain information not included in a formal report.  With respect to <u>Brady</u> material, the government represents that it is unaware of any notes containing exculpatory information with respect to these defendants but that it will preserve notes currently in its possession

1  and, if any exculpatory information is discovered therein, it will be

2  produced in ample time for the defendants to make use of it.

3          The government is correct that agents' interview notes are

4  discoverable under the Jencks Act only to the extent they contain

5  "statements" of government witnesses.  United States v. Henke, 222

6  F.3d 633, 643 (9th Cir. 2000) (citing United States v. Boshell, 952

7  F.2d 1101, 1104-05 (9th Cir. 1991)).  Moreover, the Ninth Circuit "has

8  held that an agent's rough notes . . . are not producible under the

9  Jencks Act due to the incomplete nature of the notes."  United States

10 v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996) (citing United States v.

11 Bernard, 623 F.2d 551, 557-58 (9th Cir. 1979)).  Accordingly, any

12 rough notes reflecting a statement of government witnesses as defined

13 by 18 U.S.C. § 3500(e) shall be produced with the other Jencks Act

14 material turned over by the government.  See United States v. Alvarez,

15 358 F.3d 1194, 1207 n.7 and 1211 (9th Cir.), cert. denied, ___ U.S.

16 ___, 125 S. Ct. 126 (2004).  In addition, the government will be

17 directed to preserve all other interview notes or other notes

18 containing discoverable material pending the conclusion of this case.

19 United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980)

20 (requiring the government to preserve only discoverable notes).

21          As with their Henthorn request, the defendants again request

22 that the government be required to produce Jencks discovery at least

23 ninety days before trial.  In light of 18 U.S.C. § 3500, the court

24 cannot enter an order requiring early disclosure of Jencks Act

25 material.  Accordingly, the defense' request for early disclosure is

26 denied.  Of course, the parties are encouraged to agree upon Jencks

14

material disclosure at a time that will permit the trial of the case
to proceed in an orderly fashion.[3]

### CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:
(1) the defendants' motion for discovery with respect to their
selective prosecution claim is denied; (2) the defendants' request for
Henthorn materials is granted in part and denied in part; and (3) the
defendants' motion for discovery of and an order requiring retention
of the rough notes of law enforcement personnel in connection with
this investigation is granted in part and denied in part.

DATED: November 30, 2005.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:lg
Ddad1/orders.criminal/schaferdicovery

_____

[3] The court notes that the Assistant United States Attorney
indicated at the hearing that the government has already produced to
the defense all reports reflecting witness statements and that the
only Jencks material that has not been disclosed already, even though
no trial date is yet set, is the grand jury testimony of the witnesses
who will testify at trial.