IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                    No.   CR.S-05-00238 FCD

        Plaintiff,

    v.                                       <u>FINDINGS AND RECOMMENDATIONS</u>

DALE C. SCHAFER and
MARION P. FRY,

        Defendants.

_____/

        On October 23, 2005, this matter came before the undersigned for an evidentiary hearing on the government's motion to disqualify defense counsel.[1]  Attorney Efriam Margolin appeared specially on behalf of attorney J. Tony Serra for defendant Dale Schafer and attorney Laurence Lichter appeared on behalf of defendant Marion Fry.[2]

_____

   [1] On May 8, 2006, U.S. District Judge Frank C. Damrell referred the government's motion to the undersigned for evidentiary hearing. (<u>See</u> Minutes of May 8, 2006, Court Doc. No. 104.)

   [2]  Both defendants were also present at the evidentiary hearing.

1

Assistant United States Attorneys Anne Pings and Matthew Segal appeared on behalf of the government.

Below the undersigned will summarize the background against which the pending motion arises, address the evidence introduced at the evidentiary hearing and then analyze the legal arguments of the parties.

<u>BACKGROUND</u>

On June 15, 2005, defendants Dale C. Schafer and Marion Fry were indicted on charges of conspiracy to distribute marijuana and manufacture of marijuana in violation of 21 U.S.C. §§ 846 and 841.[3] Both defendants were arrested.  On June 22, 2005, they appeared before a U.S. Magistrate Judge for arraignment with attorney J. Tony Serra entering an appearance as retained counsel of record for defendant Schafer and attorney Laurence Lichter appearing as retained counsel of record for defendant Fry.  Over the following eight months numerous defense pre-trial motions were filed by counsel.[4]  After a number of

---

[3] The first count of the indictment charges the defendants with conspiracy to distribute marijuana, to manufacture at least 100 plants of marijuana and to distribute at least 100 plants of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846.  The second count charges manufacturing at least 100 plants of marijuana in violation of 21 U.S.C. § 841(a)(1).

[4] From the outset of this prosecution the defendants have contended, among other things, that they have been improperly selected for federal prosecution because: (1) they have complied with California's "Compassionate Use Act of 1996" with respect to the medical use of marijuana; (2) defendant Schafer is a lawyer and defendant Fry is a medical doctor and both have advised or practiced in the field of California's medical marijuana laws; (3) they have exercised their First Amendment rights in being outspoken proponents of the use of medical marijuana; (4) they have a valid defense to the cultivation and distribution charges under California law which federal prosecutors wish to deny them; and (5) at least in the case of defendant Schafer he is a medical marijuana patient.

these motions were ruled upon by the court, on March 3, 2006, the government moved to disqualify both attorney Serra and attorney Lichter from representing the defendants in this criminal prosecution.

Attorneys J. Tony Serra and Laurence Lichter formerly had their offices located at Pier 5 North at the Embarcadero in San Francisco, California.  Lawyers practicing at that location apparently at some time used business cards with the moniker "Law Offices Serra, Lichter, Daar, Bustamonte, Michael, Gilg & Greenberger" appearing below their names  (See Government's Exhibits 1,2 and 17.)[5]  Later, the lawyers moved from Pier 5 North to offices located at 506 Broadway in San Francisco.  At some point after that move the lawyers practicing at that location began referring to it as "Pier Five Law Offices" and that moniker was placed on their business cards, letterhead, advertisements and pleading paper.  (See Government's Exhibits 5, 12-14, 16-19, 24-27 and 35-40.)

In seeking the disqualification of attorneys Serra and Lichter the government rejects the attorneys' position that they are members of a community of sole practitioners operating out of a common office building while merely sharing overhead expenses and staff. Rather, the government contends that the attorneys practicing out of

---

[5] The government's exhibits submitted in support of the motion to disqualify are found in several places.  Government exhibits 1-7, referred to therein as "attachments," are found in the Government's Motion for Disqualification of Counsel filed March 3, 2006.  Government exhibits 8 and 9 are apparently attached to the government's reply filed May 1, 2006.  Finally, government exhibits 10-19, 21-32 and 33-41 were submitted by the government in a bound paper format at the evidentiary hearing.

the Pier Five Law Offices are associated in the practice of law to the extent that they must be treated in effect as a single law firm.  That being the case, the government contends that the concurrent representation of both defendants in this criminal case by attorneys (Serra and Lichter) from a single firm poses an actual conflict requiring the disqualification of both lawyers.  In addition, the government states that a former employee of the defendants by the name of Paul Maggy is a government witness against the defendants who will testify at trial.  The government asserts that from April 2001 until August 2001 Mr. Maggy was represented by attorney Zenia Gilg who at the time was a member of Pier Five Law Offices.  The government contends that the successive representation of Mr. Maggy and the two defendants in this case by lawyers from one firm also poses an actual conflict that requires the disqualification of attorneys Serra and Lichter from this case.

<u>FACTS</u>

As indicated above, the assigned district judge referred this motion to the undersigned for evidentiary hearing and issuance of findings and recommendations.  The evidentiary hearing was held on October 23, 2006.  In support of the motion the government offered all of its exhibits into evidence.  Counsel for defendants moved to strike the declaration of Paul Maggy (Government Exhibit 9) unless Maggy were called to testify and subject to cross-examination.  Counsel for the government declined to call Maggy as a witness at the hearing and his
/////
/////

4

declaration was stricken and will be disregarded.[6]   The remaining exhibits offered by the government were admitted into evidence for purposes of the hearing without objection.

The government's exhibits depict the business cards, letterhead, announcements, pleading paper, and advertisements referred to above.  (See Government's Exhibits 1, 2, 5, 12-14, 16-19, 24-27 and 35-40.)  The Pier Five Law Offices letterhead, fax cover sheet and website all prominently feature the words "a community of sole practitioners" or "a group of sole practitioner attorneys."  (See Government's Exhibits 12-14, 24.)  The attorney business cards, party announcements and advertisements do not.  (See Government's Exhibits 1, 15-19, 25-27, 35-40.)  The government also submitted a news article reporting a December 2005 event at which attorney Serra was recognized as the lawyer of the year by the Criminal Trial Lawyers Association of Northern California prior to his surrender into federal custody to begin serving a prison term on tax-related charges.  (Government Exhibit 8.)  The remaining exhibits submitted into evidence by the government apparently relate to the government's argument that the Pier Five Law Offices is fact a law firm because lawyers practicing at that location appeared on behalf of one another, advanced similar arguments and filed similar motions in court.

/////

---

[6] The court will also disregard all government arguments regarding Mr. Maggy's understanding of his representation by attorney Zenia Gilg and of attorney J. Tony Serra's involvement, if any, in that representation.  The government brought this motion to disqualify and elected not to subject Mr. Maggy to cross-examination.

1  Attorney Serra submitted a declaration in which he stated

2  under penalty of perjury:

> I have never been a partner with Laurence Jeffrey
> Lichter or Zenia K. Gilg.  I do not share files or
> information about my cases with them.  The office
> has always been a community of individual lawyers
> merely sharing office expenses. [¶] I have never
> had any communications whatsoever with Zenia Gilg
> about her representation of said witness pertinent
> to this case. [¶] I have never quoted a high fee,
> or any fee at all, to said witness [Paul Maggy],
> or even talked to him.  My fees for marijuana
> cases are extremely low; I am representing Mr.
> Schafer in this matter *pro bono* (costs only).

10  (Declaration of J. Tony Serra filed April 4, 2006 at 1-2.)

11  The government called only two witnesses, Traci Coggins and

12  attorney Zenia Gilg, to testify at the evidentiary hearing.  Their

13  testimony will be summarized below.

14  Traci Coggins was indicted in this district on September 21,

15  2000, along with her then-boyfriend Paul Maggy, on charges of

16  conspiracy to manufacture marijuana and manufacturing of marijuana.

17  (See Case No. Cr. S-00-466 EJG.)  Following their arrests, Ms. Coggins

18  and Mr. Maggy appeared in court and counsel was appointed to represent

19  them.  Both defendants were initially ordered detained.  In January of

20  2001, Ms. Coggins was released on bail.  Upon her release she set out

21  to attempt to find an attorney to represent Mr. Maggy.  According to

22  Ms. Coggins, at the time she was involved in the medical marijuana

23  movement and therefore consulted with NORML and other medical

24  marijuana organizations as part of her search.  She knew of attorney

25  Serra as being a popular attorney among people in the movement and

26  also had heard that he was "a really good lawyer" who would help

people with marijuana cases and might work for free.  Accordingly, she decided to contact his office to see if attorney Serra would represent Mr. Maggy pro bono.[7]

        At this point, Ms. Coggins' memory of the details of events becomes somewhat sketchy and her account vague.[8]  She does not recall how she obtained attorney Serra's telephone number but believes it could have been from the yellow pages.  When she telephoned the number a man answered the phone.  Ms. Coggins does not specifically remember how the man answered the phone but believes he may have simply answered "Law Offices."  The man on the telephone spoke to her about the particulars of the case, including the nature of the charges, the court in which charges were pending and the co-defendants, including herself.  He advised Ms. Coggins that attorney Serra currently had too many cases and could not represent Mr. Maggy on a pro bono basis at that time but that they could find an attorney who could help Maggy. As a result of this conversation Ms. Coggins met with attorney Zenia Gilg.  Coggins believes that she was present when attorney Gilg stated that she could not represent Maggy for free.  Ms. Coggins made the arrangements for Maggy's mother to retain attorney Gilg but was not present when Gilg was paid.  Coggins was happy after attorney Gilg was retained because she believed they now had someone from "Tony Serra's

---

[7] Ms. Coggins testified that she was looking for a free lawyer to represent Maggy because although she believed his parents could afford to retain counsel to represent him, she did not believe at that time that they would so.

[8] This is not surprising since the events took place almost six years ago and her contacts with the law offices in question were brief and not conducted on her own behalf.

Office" who might be able to help Maggy.

Ms. Coggins met with attorney Gilg "just a few times" during the pendency of her criminal case.  She recalls perhaps on more than one occasion Gilg saying something to the effect that she would "check with Tony" when discussing issues relevant to their case.  However she could not recall either the issues about which such a statement was made or ever being told that attorney Serra had given a response to such an inquiry.  In August of 2001 when she and Maggy decided to cooperate with the government as part of a plea bargain in their case, Coggins recalled a meeting with counsel at which time attorney Gilg in effect stated that the office had a policy of not representing snitches and they she would have to withdraw as Maggy's attorney.[9] Finally, Ms. Coggins testified that she has never met either attorney Serra or attorney Lichter and does not believe that she has ever even seen attorney Serra.

Attorney Zenia Gilg testified that she has been an attorney for twelve years.  From 1994 until sometime in 1998 or 1999 she worked for attorney J. Tony Serra first when the law offices were located at Pier Five and later when they moved to 506 Broadway.  During this time she was the only attorney in the office that worked "for" Serra meaning that she worked on all of his cases and was paid by him.  As Gilg described it, most of the other attorneys in the office worked "with" attorney Serra as co-counsel on a case-by-case basis.  Gilg testified that by 1999 she had ceased working for Serra and was

_____

[9] On August 3, 2001 attorney Gilg moved to withdraw as Mr. Maggy's counsel of record and that motion was granted by the court.

8

working as a sole practitioner with her office remaining at the same location.

Gilg acknowledged that after 1999 she sometimes referred to herself as being "a partner," but explained that to her that term meant only that she was now required to pay into the overhead fund of the offices[10] and had her name appear on business cards.  Gilg stated that during this same period she would often refer to her office as being "at Pier Five" or as working for herself. She testified that there was no partnership agreement among the lawyers practicing at the Pier Five Offices nor was there sharing of profits between the lawyers.  Gilg testified that each lawyer in the community of sole practitioners had their own file cabinets.  She also stated that the lawyers practicing at that location did not file a partnership tax return.  Attorney Gilg noted that all of the attorneys listed themselves as individuals when appearing as attorney of record in cases and not as "Pier Five Law Offices" or "Serra, Lichter, etc."  It was her experience that many attorneys in the field of private criminal defense practice in the same sort of setting and arrangement as did the community of sole practitioners at Pier Five.  In approximately February of 2005 attorney Gilg moved her office to 809 Montgomery Street in San Francisco.

Attorney Gilg denied that there was a common practice or policy among the lawyers working at the Pier Five location not to represent individuals who decided to cooperate with the government nor

_____

[10]  According to attorney Gilg expenses including pension and health care benefits for shared staff were paid out of this fund.

did she recall ever telling someone that there was.  She did
acknowledge, however, that she cannot recall another client of hers
other than Mr. Maggy who cooperated with the government, though she
recalled an individual represented by other attorneys (Serra and
Bustamante) working at Pier Five who did elect to cooperate with the
government.  Attorney Gilg also denied that her withdrawal in Mr.
Maggy's case was due to his decision to cooperate.  Instead, she
testified that her withdrawal was necessitated by a conflict, the
specifics of which she declined to elaborate upon since Mr. Maggy has
not waived the attorney-client privilege with respect to her
representation of him.  She testified that when she went to meet with
Mr. Maggy in jail she did so on her own behalf and not on behalf of
attorney Serra.

Attorney Gilg testified that one of the advantages of being
an attorney practicing at the Pier Five Offices was that attorney
Serra, who she described as one of the great legal minds of the era,
was available for consultation.[11]  She also described attorney Serra
as being a unique individual who was always willing to discuss legal
theories and ideas with other lawyers.  Attorney Gilg testified that
both while her offices were at 506 Broadway and since she moved to the
Montgomery Street location she has told people that she would consult
with attorney Serra on issues and that she in fact has often discussed

---

[11] Attorney Gilg acknowledged that attorneys practicing at
the Pier Five Offices had forms available to them with respect
to boilerplate motions and that those were available to
attorneys outside the office as well.

1   cases that she was working on with him.[12]  However, she contended that

2   in her discussions with other lawyers including Serra regarding theory

3   or strategy, she would never disclose privileged information.

4   Finally, attorney Gilg testified that attorney Serra was never

5   involved in Maggy's representation.

6                              ANALYSIS

7   I.   The Parties' Arguments

8           As noted above, the government's argument is premised on the

9   notion that "Pier Five Law Offices" or "Law Offices Serra, Lichter,

10  Daar, Bustamante, Gig & Greenberger" is or was an entity and that all

11  attorneys connected with that entity were "associated in the practice

12  of law" to the extent that they must be treated as a single law firm

13  for purposes of determining conflicts.  The government argues that

14  under California and federal law the entity is a law association for

15  purposes of imputed disqualifications because the attorneys have

16  listed their names on common stationary, share a telephone listing,

17  have a common website, advertise their common values and interests,

18  appear on behalf of one another and share a common policy of firing

19  clients who decide to cooperate with the government.  In support of

20  their position the government relies primarily upon the decision of

21  the California Supreme Court in People v. Speedy Oil Change Systems,

22  Inc., 20 Cal. 4th 1135 (1999), where the court held:

23              The close, personal, continuous, and regular
                relationship between a law firm and the attorneys
24

25       [12] Although attorney Gilg had no recollection of telling
     Maggy that she would discuss any issue, legal or factual, with
26   attorney Serra, she indicated that it would not surprise her if
     she did.

                               11

1    affiliated with it as of counsel contains many of
     the same elements that justify the rule of
2    vicarious disqualification applied to partners,
     associates, and members. An of counsel attorney,
3    particularly one frequently in the firm's offices
     or in contact with the firm's attorneys, may be
4    consulted on a variety of matters without being
     formally identified as cocounsel. This close,
5    fluid, and continuing relationship, with its
     attendant exchanges of information, advice, and
6    opinions, properly makes the of counsel attorney
     subject to the conflict imputation rule,
7    regardless of whether that attorney has any
     financial stake in a particular matter. (Cf. Cho
8    v. Superior Court, supra, 39 Cal.App.4th at pp.
     124-126.)

9

10   20 Cal. 4th at 1154.

11        In addition the government argues that under the holding in

12   Trone v. Smith, 621 F.2d 994 (9th Cir. 1980) due to the firm's

13   representation of Maggy, all lawyers in the firm are disqualified from

14   the successive representation of defendants Fry and Schafer whether or

15   not they were actually exposed to confidential information.  The

16   government contends that in determining whether a conflict exists, it

17   is of no import that this is a criminal case in which the defendant's

18   Sixth Amendment rights may be implicated.  Next, the government argues

19   that the firm has a actual conflict in concurrently representing

20   defendants Schafer and Fry that is not properly susceptible to waiver

21   by the defendants.  Therefore, the government contends, attorneys

22   Serra and Lichter should be disqualified and defendants Schafer and

23   Fry should be allowed thirty days to find new counsel who are not

24   associated with one another in the practice of law.  Finally, the

25   government urges the court, if it is inclined to allow continued

26   representation, to take sworn testimony regarding the "community of

sole practitioners" and "conduct an extensive oral inquiry regarding any proffered waivers from the former client and the current defendants."   (Government Motion at 29.)

Counsel for defendants oppose the government's motion to disqualify in every respect.  In reliance on the United States Supreme Court's decisions in <u>United States v. Wheat</u>, 486 U.S. 153, 164 (1988) and <u>United States v. Gonzalez-Lopez</u>, ___U.S.___, 126 S. Ct. 2557, 2562-65 (2006), they argue that a criminal defendant's Sixth Amendment right to counsel of his or her choice should be accorded deference absent a compelling justification.  They suggest that here disqualification is only being sought at this late date by the government for purposes of seeking a tactical advantage over the defendants.

Attorneys Serra and Lichter argue that they are self-employed sole practitioners who share office space and many expenses with over fifteen other attorneys.  They contend that there is no law firm and that the attorneys who share space at the 506 Broadway address have in the past listed their names in alphabetical order on letterhead because there are no partners, no associates and no members but rather a group of friends and colleagues who do not hesitate, if the situation calls for it, to attack the clients of those who have offices in the same building.  They also represent that the attorneys at their office location do not have access to each other's files and maintain the privileges of their own clients.  They contend that there is no actual nor apparent conflict in their representation of the defendants in this case.  They point out that courts have found under

similar circumstances that counsel sharing office space were not
associated in the practice of law for purposes of disqualification.
Finally, attorneys Serra and Lichter contend that although the
government has from time to time sought their disqualification in
cases based upon arguments similar to those advanced here, no such
motion has ever been granted by a court.[13]

The defendants' attorneys also declare that they are
representing the defendants on a pro bono basis, charging them only
for costs associated with the defense and thereby magnifying the
importance of the defendants' right to counsel of their choice.

With respect to attorney Zenia Gilg's representation of Paul
Maggy, defense counsel contends that the referral was clearly made to
attorney Gilg as a sole-practitioner and that attorney Serra had no
access to attorney Gilg's files or her client information.  They
contend that the sole-practitioner's non-disclosure of confidential
client-related information to other sole-practitioner's within the
shared office space is required by ethical rules governing the conduct
of counsel and that their practice was consistent with those ethical
rules.  Attorneys Lichter and Serra also deny the existence of any
policy among those who share office space at 506 Broadway not to
represent individuals who elect to cooperate with the government.  As
far as the government's suggestion that attorney Serra has filed a
declaration attacking the credibility of government informant Paul

---

[13] Defense counsel cite one case from the Eastern District of
California and four from the Northern District in which
disqualification of lawyers from the "Pier 5 Law Offices" have
not been disqualified.  (See Corrected Letter Brief filed
October 30, 2006 at 1.)

Maggy using confidential information he obtained from attorney Gilg, the defense argues that defendants Schafer and Fry as well as others have provided such information to counsel and that none has been or will be provided to the defense by attorney Gilg or any of Maggy's other lawyers.[14]

Counsel on behalf of defendant Schafer point out that Schafer himself is an attorney licensed to practice law in the State of California and that he has chosen attorney Serra to represent him in this criminal prosecution after consulting privately with him and discussing any potential conflicts of interest that might arise. They emphasize that attorney Serra is a "uniquely gifted defense attorney" with a special expertise in medical marijuana prosecutions such as this, who is representing Schafer on a pro bono basis. In effect, they contend that the presence of these factors heighten defendant Schafer's right to counsel of his choosing because attorney Serra is essentially irreplaceable under these terms.

Finally, defendants Schafer and Fry point out that to the extent the government complains of the concurrent representation by attorneys Serra and Lichter, they have waived any conceivable conflict. (See Conflict Waivers filed April 3, 2006.)[15] With respect

_____

[14] As indicated above, Attorney Serra has submitted a declaration in which he states under penalty perjury that: "I have never had any communications whatsoever with Zenia Gilg about her representation of said witness pertinent to this case." (Declaration of J. Tony Serra filed April 4, 2006 at 1-2.)

[15] In those waivers defendants Schafer and Fry state that their attorney is a sole practitioner who shares office space with the attorney for their co-defendant, that they have spoken to their own attorney regarding any actual or potential conflict

1   to the government claim of conflict based upon alleged successive

2   representation due to attorney Gilg's 2001 representation of

3   government witness Maggy, they contend that attorney Serra was never

4   Maggy's lawyer.   Rather, Maggy's girlfriend was told that Serra was

5   unavailable to take his case, Serra never met Maggy, never spoke to

6   him and never gained any confidential information about him from

7   attorney Gilg.   However, if there remains any concern in this regard,

8   they point out that attorney Gilg represented Maggy in 2001 and that

9   she moved her offices from 506 Broadway to her current Montgomery

10  Street address approximately six months before defendants Schafer and

11  Fry were indicted.   Under these circumstances, they argue, the

12  California Supreme Court's decision in <u>People v. Cox</u>, 30 Cal. 4th 916

13  (2003) requires a conclusion that no actual or potential conflict

14  exists with respect to current counsel's representation of these

15  defendants.

16  II.   <u>The Law</u>

17          The Sixth Amendment right to counsel includes a criminal

18  defendant's right to retain counsel of his own choosing.   <u>United</u>

19  <u>States v. Gonzalez</u>, 126 S. Ct. at 2561; <u>Wheat</u>, 486 U.S. at 159; <u>Powell</u>

20  <u>v. Alabama</u>, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say

21  that, the right to counsel being conceded, a defendant should be

22  afforded a fair opportunity to secure counsel of his own choice").

23  Thus, "the Sixth Amendment guarantees the defendant the right to be

24  

25  that may arise based upon these circumstances, and that while
    they do not believe any conflict exists or will arise, they
26  hereby waive any existing or potential conflict because they
    wish to proceed with their current counsel.

1   represented by an otherwise qualified attorney whom that defendant can

2   afford to hire, or who is willing to represent the defendant even

3   though he is without funds." Gonzalez, 126 S. Ct. at 2561 (quoting

4   Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-625

5   (1989)).  This presumption in favor of a criminal defendant's right to

6   counsel of choice may be overcome by a showing of either an actual

7   conflict or a serious potential for such conflict posed by the

8   representation.  Wheat, 486 U.S. at 164; see also United States v.

9   Jones, 381 F.2d 114, 119 (2d Cir. 2004).

10       Motions to disqualify counsel are decided in light of state

11  law.  In re County of Los Angeles, 223 F. 3d 990, 995 (9th Cir. 2000);

12  Hitachi Ltd. v. Tatung Co., 419 F. Supp. 2d 1158, 1160 (N.D. Cal.

13  2006); see also E. D. Cal Local Rule 83-180(e).  Ultimately, however,

14  the decision of whether to disqualify counsel due to conflict of

15  interest is within the trial court's discretion based upon

16  consideration of standards of professional conduct.  Trone v. Smith,

17  621 F.2d 994, 999 (9th Cir. 1980) (applying the ABA Code of

18  Professional Responsibility in determining whether disqualification of

19  counsel was required); Hitachi Ltd., 419 F. Supp. 2d at 1160.

20  Importantly for purposes of the pending motion, and as many courts

21  have recognized, the party seeking disqualification bears the burden

22  of proving the conflict alleged.  United States v. Pizzonia, 415

23  F.Supp. 2d 168, 179 (E.D.N.Y. 2006)("The burden of establishing that

24  an attorney-client relationship existed between the attorney and the

25  former client is on the party seeking disqualification."); United

26  States v. Decay, 406 F. Supp. 2d 679, 683 (E.D. La. 2005); Cramer v.

17

Sabine Tansp. Co., 141 F. Supp. 2d 727, 730 (S.D. Tex. 2001); Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 729 (E.D. Va. 1990)("The moving party bears a high standard of proof to show that disqualification is warranted.")  In this regard, it has been held that:

> A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing. Therefore, notwithstanding the fundamental importance of safeguarding popular confidence in the integrity of the legal system, attorney disqualification ... is a sanction that must not be imposed cavalierly.

F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1316 (5th Cir.1995).

As noted above, the government relies heavily upon the decision in People v. Speedy Oil Change Systems, Inc., 20 Cal. 4th 1135 (1999).  In that case defendant Mobil Oil Corporation consulted with an attorney who was listed as "of counsel" to a law firm.  Id. at 1139.  While Mobil was consulting with the "of counsel" attorney, their adversary associated the firm in which the attorney was "of counsel" as their counsel of record in the action against Mobil.  Id. Mobil moved to disqualify the firm.  The California Supreme Court agreed that disqualification was required under such circumstances, holding:

> We adopt the prevailing rule concerning "of counsel" conflicts of interest and reverse the judgment of the Court of Appeal. For attorneys in the same firm to represent adverse parties in the same litigation is so patently improper that the rule of disqualification is a per se or "automatic" one. [citation omitted.] Conflicting representations that would disqualify all of a law firm's attorneys are not more acceptable when an attorney of counsel to the firm creates the

> conflict.  Clients, and the public, should expect
> confidentiality and loyalty from attorneys who
> effectively declare they practice law in a close,
> personal, and continuing association. These
> legitimate expectations would be frustrated if a
> firm could represent one party in litigation while
> an attorney of counsel to the firm represented an
> adversary in the same case.

20 Cal. 4th at 1139-40.

Here, the government places great weight on the specific facts before the California court in Speedy Oil, emphasizing that the "of counsel" attorney in that case had his own clients which he billed separately from the firm, paid rent for his office space, had some of his own staff, did not share in the profits or liabilities of the firm and associated on cases with the firm on a case-by-case basis.  See 20 Cal 4th at 1142.  However, it is clear that the court's holding rested heavily on the formal "of counsel" designation the attorney in question shared with the law firm.  20 Cal 4th at 1153-56.  As the court noted, the designation "of counsel" at the very least means that the "of counsel" lawyer has a close, personal, continuous and regular relationship with the firm.  20 Cal. 4th at 1153.  More importantly, the court observed that an "of counsel" designation makes an affirmative representation to a firm's clients that the services of that attorney are available to clients of the firm.  Id.  That is not the case here.  Finally, of course, Speedy Oil was not decided in the context of a criminal prosecution where a defendant's Sixth Amendment rights are implicated.

On the other hand, it has often been recognized that in determining whether counsels' relationship with one another poses a

19

conflict requiring disqualification, substantial weight may be given

to defense counsel's representations to the court.  Cuyler v.

Sullivan, 446 U.S. 335, 347 (1980) ("trial courts necessarily rely in

large measure upon the good faith and good judgment of defense

counsel"); United States v. Haren, 952 F.2d 190, 195 (8th Cir. 1991);

United States v. Kindle, 925 F.2d 272, 275 (8th Cir. 1991); United

States v. Crespo de Llano, 838 F. 2d 1006, 1012 (9th Cir. 1987) (and

cases cited therein).  Here, defense counsel stridently represent

that, as their letterhead and website states, they are a community of

sole practitioners and do not share client confidences with one

another unless they are working as co-counsel on behalf of a client.

This arrangement is not unique, particularly among attorneys

engaged in the defense of criminal cases.  "Solo practitioners sharing

office space with common staff and materials is not unusual and such

an arrangement does not necessarily cause a conflict of interest when

codefendants are thus represented."  Kindle, 925 F.2d at 275.  "While

members and associates in one firm may not represent conflicting

interests, practitioners who share office space and occasionally

consult with one another are not regarded as constituting a single

firm for conflict purposes."  United States v. Varca, 896 F.2d 900,

903 (5th Cir. 1990) (relationship between counsel where they shared

office space, jointly paid office  overhead, shared fees when they

referred clients to one another and shared non-confidential

information did not require disqualification). See also United States

v. Pungitore, 910 F.2d 1084, 1140 (3d Cir. 1990) (counsel's sharing of

office space and participation in joint trials did not lead to

1  conclusion that they were associated in the practice of law where they

2  had separate stationary available to them, had their own secretary,

3  paid their own taxes and had different clients); United States v.

4  Young, 73 F. Supp. 2d 1014, 1018-19 (N.D. Iowa 1999) (evidence

5  insufficient to find conflict where two defense attorneys together

6  owned the building in which their offices were located and cooperated

7  with one another on various cases because they were essentially sole

8  practitioners sharing office facilities), rev'd on other grounds, 223

9  F.3d 905 (8th Cir. 2000).

10      With respect to whether defense counsel are associated in

11  the practice of law (see Fed. R. Crim. P 44(c)), the court in United

12  States v. Blankenship, No. Crim. A 99-185, 1999 WL 639679 (E.D. La.

13  1999) faced a situation somewhat similar to that presented here.  In

14  that case a closely held corporation, its president (Blankenship) and

15  vice-president (Dunn) were indicted on criminal charges related to the

16  unlawful disposal of hazardous waste.  1999 WL 639679 at *1.  Attorney

17  Fitzpatrick appeared on behalf of defendant Blankenship and attorney

18  Hagood appeared on behalf of defendant Dunn.  Id.  Upon their

19  appearance in the case the two attorneys presented business cards

20  indicating that they practiced law under the firm name "Fitzpatrick

21  and Hagood," and shared an office address, telephone and fax numbers.

22  Id.  It was later determined that both attorneys were being jointly

23  paid by the corporate defendant and that Fitzpatrick had initially met

24  with both individual defendants before bringing Hagood in to represent

25  Dunn and then meeting jointly on several occasions.  Id. at *3. In

26  response to a government motion challenging the representation, the

1  defense attorneys represented to the court that: (1) they were not a

2  partnership; (2) they simply share office space and staff; (3) they

3  sometimes represent a client together but their letterhead contained a

4  disclaimer stating "Not a partnership - Each Attorney Engaged in the

5  Independent Practice of Law;" and (4) they would only consider what

6  was in the best interest of their respective client in the case.  <u>Id</u>.

7       The court in <u>Blankenship</u> recognized in particular that the

8  use of business cards with "Fitzpatrick and Hagood" might create

9  ambiguity as to their status, but found it appropriate to rely upon

10 counsels' representation that they did not practice in partnership or

11 association with one another.  <u>Id</u>. at *3.  The district court

12 concluded that Fitzpatrick and Hagood were not associated in practice

13 of law, that there was no conflict and denied the government's motion

14 to disqualify counsel. <u>Id</u>. at *3, 5.

15 III.  <u>The Government's Showing In This Case</u>

16      As noted, the government's motion to disqualify both defense

17 counsel in this criminal case is premised entirely on the proposition

18 that the attorneys who have practiced at the Pier Five and, later, 506

19 Broadway addresses are associated in the practice of law together to

20 the extent that they must be treated as a law firm for purposes of

21 imputing conflicts among one another.

22      Applying the legal principles set forth above, the

23 undersigned concludes that the government has simply failed to meet

24 their burden of establishing the existence of a conflict.  <u>See</u>

25 <u>Pizzonia</u>, 415 F.Supp. 2d at 179; <u>Decay</u>, 406 F. Supp. 2d at 683;

26 <u>Cramer</u>, 141 F. Supp. 2d at 730; <u>Tessier</u>, 731 F. Supp. at 729.  In this

regard, the little evidence presented to this court establishes merely that these attorneys shared office space with one another and utilized common staff and materials in their practice of law while often consulting with one another and cooperating amongst each other on a case-by-case basis.  None of these facts, even when considered together, compel the conclusion that these attorneys were transformed into a single law firm or association for conflict purposes.  See Kindle, 925 F.2d at 275; Pungitore, 910 F.2d at 1140; Varca, 896 F.2d at 903; Young, 73 F. Supp. 2d at 1018-19.  Likewise, the fact that attorney Gilg shared non-confidential information regarding cases she was handling with attorney Serra or other lawyers does not transform those lawyers into a single entity for purposes of determining whether a conflict exists.  See Varca, 896 F.2d at 903.  To suggest otherwise would be a dangerous precedent and pose a serious risk of impeding vigorous representation by counsel.  Indeed, courts have rejected the conclusion that lawyers are practicing in association with one another for purposes of conflict determination under arguably more concerning circumstances.  See Varca, 896 F.2d at 903; Young, 73 F. Supp. 2d at 1018-19; Blankenship, No. Crim. A 99-185, 1999 WL 639679.

Although the fact that the business cards of these lawyers at one time reflected their individual names above the moniker "Law Offices Serra, Lichter, Daar, Bustamante, Gig & Greenberger" may be sufficient to create some ambiguity regarding their status, it is insufficient to meet the government's burden.  See Blankenship, 1999 WL 639679 at *3.  On this record, the court is justified in relying upon the representations of veteran attorneys Serra and Lichter and

the sworn testimony of attorney Gilg[16] that they are and were a
community of sole practitioners who do not share the files or
confidences of their individual clients with one another and that
there is no conflict of interest posed by attorney Gilg's prior
representation of Maggy, attorney Serra's representation of defendant
Schafer and attorney Lichter's representation of defendant Fry.   See
Cuyler, 446 U.S. at 347; Haren, 952 F.2d at 195; Kindle, 925 F.2d at
275; Crespo de Llano, 838 F. 2d at 1012; Blankenship, 1999 WL 639679
at *3.

        With respect to the public's perception, the record
indicates that Ms. Coggins was told that attorney Serra was
unavailable to represent Mr. Maggy but that another attorney could
help her.  She was referred to attorney Gilg and helped arrange for
Gilg to be retained on Maggy's behalf.  The fact that from that
scenario Ms. Coggins apparently sought to draw the conclusion,
unjustified in the undersigned's opinion, that attorney Serra was
involved in Maggy's representation is unfortunate but does not justify
denying the defendants in this case counsel of their own choosing.  As
one district court recently observed in denying a motion to disqualify

_____

[16] The undersigned recognizes that attorney Gilg testified
that during the time her office was located at 506 Broadway she
on occasion would refer to herself as "a partner" while other
times indicating that she worked at "Pier Five" or "for
herself."  However, the court also found her explanation
credible that by using the term "partner" she meant only that
she was required to pay into the overhead fund and had her name
more prominently featured on business cards.  The court would
also note that there was no evidence submitted suggesting that
Ms. Coggins was ever told that attorney Gilg was a partner of
attorneys Serra or Lichter or of any other lawyers practicing at
that locale.

defense counsel:

> The courts are concerned that the perception of the public not be adverse lest the legal system lose public trust. Our system of law depends upon the public, and other governmental agencies, following judicial judgments by force of habit and out of respect. The courts themselves have no direct power of enforcement: they can do nothing without the aid of the executive and legislative branches, and public goodwill. [¶] Public perception, however, may not control reality and the law. In this case, the fundamental deciding factor is defendant's Sixth Amendment right to have counsel of his own choosing.

<u>Pizzonia</u>, 415 F. Supp. 2d at 186.

The government has not sufficiently demonstrated that attorneys Serra, Lichter and Gilg were associated in the practice of law to the extent that they should be treated as having practiced in a law firm together.  That being the case, there is no conflict posed under either the government's successive or concurrent representation theories.  For the same reason, the government's request that the court conduct an "extensive oral inquiry regarding any proffered waivers from the former client and the current defendants" should be rejected as unnecessary.

<u>CONCLUSION</u>

For the reasons set forth above, IT IS HEREBY RECOMMENDED that the Government's Motion for Disqualification of Defense Counsel be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within ten days after being served with these findings and recommendations, the parties may file

1   written objections with the court.  Such a document should be

2   captioned "Objections to Magistrate Judge's Findings and

3   Recommendations."  The parties are advised that failure to file

4   objections within the specified time may waive the right to appeal the

5   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

6   1991).

7   DATED: November 12, 2006.

8                                    _____

9                                    DALE A. DROZD

10                                   UNITED STATES MAGISTRATE JUDGE

11  DAD:lg
    Schafer0238.disqualify.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26