UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

DALE C. SCHAFER and MARION P. FRY,

        Defendants.

NO. CR. S-05-0238 FCD

ORDER

----oo0oo----

This matter is before the court on the government's motion to disqualify defense counsel.  This matter was referred to the magistrate judge for an evidentiary hearing, which was held on October 23, 2005.  On November 12, 2006, the magistrate judge entered Findings and Recommendations ("F&Rs"), recommending that the government's motion to disqualify defense counsel be denied.  The government filed objections to the F&Rs, and defendants filed a response.  The court has conducted a de novo review of the matter pursuant to 18 U.S.C. § 3145 and heard oral argument on

this matter on December 4, 2006.[1]

The gravamen of the government's motion for disqualification is that the attorneys who practice at "Pier 5 Law Offices" represent themselves to the public as a law firm, even though they claim to be practicing as a "community of sole practitioners." The government contends that, under California law, because, at a minimum, they create ambiguity as to the nature of their association to the public, the attorneys who practice at Pier 5 Law Offices should be treated as a law firm for the purposes of a conflict analysis under the 6th Amendment.

The government has raised serious cause for concern regarding the manner in which the attorneys of Pier 5 Law Offices conduct their practices with respect to their communications to the public. Rule 1-400 of the California Rules of Professional Conduct provides that a communication made by an attorney "shall not . . . [c]ontain any matter, or present or arrange any matter in a manner or format which is false, deceptive, or which tends to confuse, deceive, or mislead the public." In an advisory opinion, the Standing Committee on Professional Responsibility and Conduct ("the Committee") of the California State Bar concluded that in order to ensure compliance with this rule, "[a]ttorneys who share facilities or staff must take reasonable steps under the circumstances to ensure that the public is not confused, deceived, or misled concerning their relationship with

---

[1] The magistrate judge provided a thorough and well-reasoned analysis of the government's motion, which the court adopts. The court writes only to elaborate on certain points raised in the government's objections and defendants' reply to the F&Rs and at oral argument.

2

one another." Cal. Eth. Op. 1997-150.  The Committee referenced one of its previous opinions which concluded that "separate sole practitioners are not allowed to use a group trade name to advertise their sole practices jointly, unless, in each usage, each attorney discloses affirmatively that he or she is a sole practitioner." Id. (citing Cal. Eth. Op. 1986-90).  The Committee also reinforced its prior conclusion that "[t]he crucial concern, both as a matter of legal ethics and of professional liability, is what a client knows or reasonably should know, not what the lawyers privately intend or agree among themselves, but fail to communicate. Id. (quoting Cal. Eth. Op. 1986-90).  The evidence presented at the hearing before the magistrate judge raises questions as to whether the attorneys at Pier 5 Law Offices have violated Rule 1-400 of the California Rules of Professional Conduct through communications with the public, specifically business cards and advertisements, which contain the name "Pier 5 Law Offices" or a list of the attorneys who practice at Pier 5 Law Offices without disclosing that it is a "community of sole practitioners."

However, the evidence presented at the hearing also demonstrates that Pier 5 attorneys do not conduct their practice as a law firm, but as a community of sole practitioners.[2] Moreover, the government did not present evidence that there was any breach of attorney-client confidentiality between the attorneys at Pier 5 Law Offices.  Nevertheless, the government

---

[2] However, the overwhelming prominence of one Pier 5 lawyer, J. Tony Serra, seemed to insinuate a symbolic, comforting presence in the attorney-client relationship of at least one of the Pier 5 attorneys, Zenia Gilg, and her client, Paul Maggy.

3

argues that despite the absence of such evidence, the potentially unethical conduct of Pier 5 attorneys and the court's interest in ensuring the integrity of the legal profession outweighs the defendants' 6th Amendment rights to the counsel of their choice.

The Sixth Amendment requires that the defendant's right to select and be represented by his preferred attorney must be qualified by the Sixth Amendment's essential aim to guarantee an effective advocate, free of conflicts of interest. Wheat v. United States, 486 U.S. 153, 159 (1988); United States v. Crespo de Llano, 838 F.2d 1006, 1012 (9th Cir. 1988). It is well-established that, in some cases, the conflicts of interest presented by chosen counsel are such that they cannot be waived, and therefore, a defendant's right to preferred counsel must be curtailed. Wheat, 486 U.S. at 161-62. However, the first inquiry in this analysis is whether a conflict or the potential for conflict is presented by preferred counsel's representation of the defendant.

In this case, the only basis for conflict offered by the government hinges on the imputation of conflict to defendants' attorneys if Pier 5 Law Offices is considered a law firm for the purposes of a 6th Amendment analysis. In determining whether Pier 5 Law Offices should be treated as a law firm, the government asks this court to import the rationale of California State Bar Ethics Opinions. However, while the Committee comments on the effect that the attorneys' conduct might have on professional liability, it does not address the effect of potential imputation of law firm status for purposes of disqualification in either the civil or criminal context. See

Cal. Eth. Op. 1997-150; Cal. Eth. Op. 1986-90.  The government also asks the court to consider the California Supreme Court's opinion in People v. SpeeDee Oil Change Systems, Inc., 20 Cal. 4th 1135 (1999).[3]  The SpeeDee Oil Court addressed imputation of law firm status for the purposes of disqualification in a civil matter.  Id. at 1135.  While the California State Supreme Court's ruling indicates the importance of considering the practicalities of the relationship between attorneys and the public designation of that relationship, the SpeeDee Oil Court was not confronted with the dilemma of balancing these considerations against the constitutional right to counsel of a defendant's choice.  As such, the government's proffered authority lends little support to its argument.

However, despite the paucity of legal precedent on this issue, the government's motion does present a difficult and close question.  On one hand, the court has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  Wheat, 486 U.S. at 160.  In this context, Pier 5 Law Office's communications with the public are troubling to the court.  The representations of Pier 5 lawyers through advertisements, business cards, and their references to fellow Pier 5 lawyers as "partners," at best, lends itself to ambiguity and, at worst, violates California Rules of Professional Conduct.  To the extent that a reasonable member of the public would perceive the entity as a law firm, it would

---

[3] The magistrate judge also addressed and distinguished this case in his F&Rs.  (F&Rs at 19).

5

1  appear that the same law firm appears to be representing not only
2  both defendants in this case, who may have conflicting interests,
3  but also may have previously represented an informant against
4  these defendants.
5       On the other hand, the court must protect a defendants'
6  Sixth Amendment right to counsel of choice.  "[T]he Sixth
7  Amendment guarantees the defendant the right to be represented by
8  an otherwise qualified attorney whom that defendant can afford to
9  hire, or who is willing to represent the defendant even though he
10 is without funds."  United States v. Gonzalez-Lopez, 126 S. Ct.
11 2557, 2561 (2006) (quoting Caplin & Drysdale, Chartered v. United
12 States, 491 U.S. 617, 624-25 (1989)).  "It commands, not that a
13 trial be fair, but that a particular guarantee of fairness be
14 provided - to wit, that the accused be defended by the counsel he
15 believes to be best."  Id. at 2562.  This right is only
16 circumscribed by a "demonstration of actual conflict" or "a
17 showing of a serious potential for conflict."  Wheat, 486 U.S. at
18 1700; see also Gonzalez-Lopez, 126 S. Ct. at 2561-63.  In this
19 case, the government has not presented sufficient evidence that
20 the conduct of the attorneys at Pier 5 Law Offices, in their
21 representations to the public and solicitation of business,
22 creates the actual or potential conflict of interest that would
23 be present if they practiced in the same law firm.  Nor is there
24 sufficient evidence to suggest that defendants' attorneys will
25 not "use every skill, expend every energy, tap every legitimate
26 resource in the exercise of independent professional judgment on
27 behalf of the client and in undertaking representation on the
28 client's behalf."  Trone v Smith, 621 F.2d 994, 998 (9th Cir.

1  1980).
2      The court finds the F&Rs to be supported by the record and
3  by the magistrate judge's analysis.  Therefore, the Findings and
4  Recommendation filed November 12, 2006, are ADOPTED in full, and
5  the government's motion for disqualification is DENIED.
6      IT IS SO ORDERED.
7  DATED: December 18, 2006

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE